Filed 02/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| KELLIE KUHNEL,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | A163307<br><br>(Contra Costa County<br>Super. Ct. No. 5-210601-1) |

Kellie Kuhnel seeks a writ of mandate directing the trial court to terminate her probation on the ground she is entitled to the retroactive benefit of a recent statutory amendment reducing the length of probationary terms. Previous law generally allowed a court to place a defendant convicted of a misdemeanor on probation for up to three years. (Former Pen. Code, § 1203a.)[1] Effective January 1, 2021, this default period is reduced to one year. (Assem. Bill No. 1950 (2019–2020 Reg. Sess.), Stats. 2020, ch. 328, § 1 (Assembly Bill 1950); Pen. Code, § 1203a.) Appellate courts have unanimously concluded that Assembly Bill 1950 applies retroactively to cases that are not yet final, and have accordingly reduced the length of probationary terms imposed before the new law went into effect. (See, e.g.,

_____

[1] All undesignated statutory references are to the Penal Code.

1

*People v. Quinn* (2021) 59 Cal.App.5th 874 (*Quinn*).)  In this case, Kuhnel was originally placed on three years' probation, and the question before us is whether this rule of retroactivity prevents the court from adjudicating a violation allegedly committed during her first year on probation, which resulted in the court summarily revoking her probation early in the second year.

All of these events occurred well before Assembly Bill 1950 was enacted or went into effect, and were appropriate under then-governing law.  (See section 1203.3, subd. (a).)  We conclude that having summarily revoked Kuhnel's probation under these circumstances, the trial court retained jurisdiction to conduct a formal hearing on the probation violation even after the effective date of Assembly Bill 1950, and we accordingly deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Kellie Kuhnel was convicted of misdemeanor embezzlement and placed on probation for three years on November 17, 2016.  Eleven months into her probation, in October 2017, the Orinda Police Department received a report that Kuhnel had committed new acts of fraud, and in early December the probation department reported this to the trial court.  Thirteen months into her probation, on December 11, 2017, the trial court summarily revoked Kuhnel's probation and set a hearing on the violation for January 8, 2018.  The hearing was continued multiple times, on several occasions because Kuhnel failed to appear and twice in 2021 at her request.

Without the probation violation hearing ever being held, Kuhnel moved on June 18, 2021 to terminate her probation, arguing that she had been on probation for more than one year and Assembly Bill 1950 applied retroactively to shorten her probationary term.  Relying on *People v. Leiva*

2

(2013) 56 Cal.4th 498 (*Leiva*) and a statutory provision that revocation of probation serves to toll the running of a probationary term (§1203.2, subd. (a) (§ 1203.2(a))), the People opposed the motion on the ground the court retained jurisdiction to adjudicate violations that took place during the original term of probation. The trial court accepted this theory, at least under the circumstances of this case, and accordingly denied Kuhnel's motion on July 9, 2021.

Kuhnel petitioned the trial court's appellate division for a writ of mandate, and the appellate division denied the petition without explanation on August 12, 2021. Kuhnel then petitioned this court for a writ of mandate (Code Civ. Proc., § 904.3), and on September 23, 2021, we issued an alternative writ directing the appellate division of the superior court either to grant her petition or to show cause why a peremptory writ of mandate should not be granted. The appellate division elected not to grant the petition, explaining that it would welcome our guidance on the interaction among section 1203.2(a), *Leiva*, and Assembly Bill 1950. The District Attorney therefore filed a return to the writ petition, and Kuhnel has filed a traverse.

## DISCUSSION

When Kuhnel was placed on probation, section 1203a provided that courts could suspend the imposition or execution of sentence in misdemeanor cases and "make and enforce . . . terms of probation for a period not to exceed three years," or longer if the maximum term of imprisonment provided by law exceeded three years. Among the amendments made by Assembly Bill 1950, signed by the Governor on September 30, 2020 and effective January 1, 2021, misdemeanor probation may now not exceed one year, unless the offense provides for a specific probation length, which Kuhnel's crime did not. (§ 1203a; Stats. 2020, ch. 328, § 1; §§ 487, subd. (a), 489.) Thus, under the

3

new law, Kuhnel could have been ordered to serve no more than one year of probation for her offense. Assembly Bill 1950 also reduced the default maximum probationary term for felonies to two years. (§ 1203.1, subds. (a) & (m); Stats. 2020, ch. 328, § 2.) Kuhnel contends that these amendments apply retroactively and that, as a result, her probation ended as a matter of law on November 17, 2017 and the court no longer has jurisdiction over her.

## I. Estoppel

As a threshold issue, the People contend Kuhnel may not challenge the court's authority to consider the probation violation because she consented to the court's continuing jurisdiction and contributed to the delays that resulted in the matter being continued until after Assembly Bill 1950 went into effect. They rely for this proposition on *People v. Ford* (2015) 61 Cal.4th 282 (*Ford*), but *Ford* is readily distinguishable.

In *Ford*, the defendant was placed on probation under an agreement that provided he would pay restitution to the victim of his crime. (*Ford*, *supra*, 61 Cal.4th at p. 285.) When the probation officer determined the appropriate amount of restitution, the defendant requested a hearing, which was continued many times, sometimes at his request and always with his consent. (*Id*. at p. 285.) The hearing finally concluded a week after probation expired, at which point the defendant contested the court's jurisdiction to order restitution. (*Id*. at pp. 285–286.) In concluding the trial court could still order restitution, our high court explained that "the expiration of a probationary period does not terminate a court's fundamental jurisdiction"; an award after that time would at most be "an ordinary act in excess of jurisdiction." (*Id*. at p. 287.) Such an act "is treated as valid until set aside," and a defendant who seeks or consents to such an act may be estopped from challenging the court's jurisdiction. (*Ibid*.) Because the defendant's own

4

requests played a role in delaying the hearing and he did not object to a continuance beyond his probationary term, he was estopped from challenging the court's exercise of jurisdiction, *Ford* held. (*Id*. at pp. 288–289.) Other cases have reached similar conclusions. (See *In re Bakke* (1986) 42 Cal.3d 84, 89–90 [trial court had jurisdiction to order execution of jail term that had been stayed at probationer's request]; *In re Griffin* (1967) 67 Cal.2d 343, 348 [estoppel where probationer requested continuance of probation revocation hearing beyond expiration of probationary term]; *People v. Ham* (1975) 44 Cal.App.3d 288, 294 [defendant requested continuance of hearing past probationary period].)

The People argue that Kuhnel is likewise estopped because she was the reason for some of the continuances in this matter and consented to the continuance that placed this case within the effective date of Assembly Bill 1950. But unlike the defendant in *Ford*, Kuhnel neither requested nor consented to delays that directly resulted in the court losing jurisdiction. Rather, if her theory is correct, the trial court should be deemed to have lost jurisdiction in November 2017, before the alleged violation was even reported to the court. The delays Kuhnel sought or agreed to took place *after* that date and therefore did not cause the alleged loss of jurisdiction, except indirectly in that they caused the case to be still pending when the new law was passed and took effect. Because the *Ford* line of cases does not address such indirect effects, we will consider her contentions on the merits.

## II. Retroactivity

Multiple courts have considered whether the amendments of Assembly Bill 1950 apply retroactively to the benefit of a person whose judgment is not

5

yet final on appeal, and they have uniformly held that they do.[2]  As Division Four of this appellate district recently explained, although statutes are generally presumed to apply prospectively, the Legislature may " ' "enact laws that apply retroactively, either explicitly or by implication," ' " and " 'amendatory statutes that lessen the punishment for criminal conduct are ordinarily intended to apply retroactively.' " (*Quinn*, *supra*, 59 Cal.App.5th at p. 881.)  This is because "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper." (*In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*).)  After such a legislative determination, " 'it is safe to assume, . . . that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts.' " (*Id.* at pp. 745–746.)

The court in *Quinn* concluded the amendments of Assembly Bill 1950 fell within this rule, rejecting the argument that the *Estrada* presumption of retroactivity did not apply because probation is not a form of criminal punishment.  (*Quinn*, *supra*, 59 Cal.App.5th at pp. 882–885.)  *Quinn* followed *People v. Burton* (2020) 58 Cal.App.5th Supp. 1, an opinion of the Los Angeles County appellate division that applied Assembly Bill 1950 retroactively. (*Quinn*, *supra*, 59 Cal.App.5th at p. 882.)  As explained in *Burton*, "[t]he longer the length of probation, the greater the encroachment on a probationer's interest in living free from government intrusion," whether that

---

[2] In *People v. Prudholme*, S271057, rev. granted Nov. 10, 2021, our high court has directed the parties to submit briefing on whether Assembly Bill 1950 applies retroactively under *Estrada* and, if so, whether the remand procedure of *People v. Stamps* (2020) 9 Cal.5th 685 applies.  (*People v. Prudholme* (Dec. 22, 2021) 2021 Cal. Lexis 8859.)

intrusion takes the form of probation conditions or a risk of further incarceration.  (*Burton*, at p. 15.)

Quinn also discussed the legislative history of Assembly Bill 1950, which reflects "the Legislature's concern . . . that lengthy probationary periods do not serve a rehabilitative function and unfairly lead to reincarceration for technical violations."  (*Quinn, supra*, 59 Cal.App.5th at p. 879.)  For instance, the author's statement explained that many probationers " ' "violate probation and end up incarcerated as a result," ' " often for violations that are technical in nature; that research shows probation services are most effective in the first 18 months, so " ' "[a] shorter term of probation, allowing for an increased emphasis on services, should lead to improved outcomes" ' "; and that the bill's reduced probationary period was "sufficient to fulfill the rehabilitative function of probation."  (*Id.* at pp. 879–880, citing Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended May 6, 2020, pp. 3–6.)  *Quinn* concluded, "the only reasonable inference to draw from" this legislative history "is that the shorter term of probation 'now deemed to be sufficient should apply to every case to which it constitutionally could apply.' [Citation.]  The alternative is untenable:  that the Legislature intended to subject thousands of criminal defendants whose cases are not yet final to terms of probation determined to be unnecessary for rehabilitation, arguably discriminatory and likely to result in unfair and unnecessary reincarceration."  (*Quinn*, at p. 883.)

Every appellate case to have considered the retroactivity of Assembly Bill 1950 has agreed with *Quinn*, and the People do not disagree with their conclusions.  (See, e.g., *People v. Greeley* (2021) 70 Cal.App.5th 609, 627; *People v. Czirban* (2021) 67 Cal.App.5th 1073, 1095; *People v. Schulz* (2021)

7

66 Cal.App.5th 887, 894–895; *People v. Lord* (2021) 64 Cal.App.5th 241, 245–246; *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1071–1074, review granted June 30, 2021, S268787; *People v. Sims* (2021) 59 Cal.App.5th 943, 958–964.) But the question in each of those cases was whether a probationer was entitled to a reduction of an ongoing probationary term, not whether Assembly Bill 1950 effectively expunges, or deprives the trial court of authority to adjudicate, probation violations that occurred and that resulted in summary revocation while a person was validly on probation under the law in effect at the time.

To understand whether or how *Estrada* applies in this case we look for guidance in the law governing the adjudication of probation violations. First comes the rule that it is only "during the term of probation" that the court has authority to revoke or modify an order placing the defendant on probation. (§ 1203.3, subd. (a).) Once probation expires, the trial court loses jurisdiction to modify its terms. (*Hilton v. Superior Court* (2014) 239 Cal.App.4th 766, 772–773, 777 [court cannot award additional restitution after probationary term expires].) As *Hilton* explains, " '[a]n order revoking probation must be made within the period of time circumscribed in the order of probation. Otherwise, the probationary period terminates automatically on the last day.' " (*Id.* at p. 773, italics omitted.)

The second rule modifies the first: revocation of probation, "summary or otherwise, shall serve to toll the running of the probationary period." (Former § 1203.2(a).)[3] The Legislature added this provision in 1977 to respond to two then-current appellate decisions construing section 1203.3 to

---

[3] The principle remains in the current version of section 1203.2(a) but is articulated in more general terms: "revocation, summary or otherwise, shall serve to toll the running of the *period of supervision*." (§ 1203.2(a) (italics added).)

8

require even the formal revocation hearing—compliant with *Morrissey v. Brewer* (1972) 408 U.S. 471 (*Morrissey*) and *People v. Vickers* (1972) 8 Cal.3d 451 (*Vickers*)—to conclude before the probationary period expired. (See *Leiva, supra*, 56 Cal.4th at p. 512.) The Legislature added a tolling provision because it "was focused on *preserving the jurisdiction* of the trial court to hold formal probation violation hearings that met *Morrissey-Vickers* requirements after the period of probation had expired." (*Ibid.*) It is now well established that summary revocation of probation is appropriate and preserves a court's jurisdiction over a probationer, "even if the evidentiary hearing, formal revocation and sentencing all occur after the period of probation would otherwise have been completed." (*People v. Journey* (1976) 58 Cal.App.3d 24, 27 (*Journey*); accord, *People v. Medeiros* (1994) 25 Cal.App.4th 1260, 1267; § 1203.2(a).)

The parties disagree on how these principles apply to the case before us. The order revoking Kuhnel's probation was made within the period circumscribed by the original order of probation as required by *Hilton*, but Kuhnel is quick to point out that it was *not* made within the one-year probationary period that retroactive application of Assembly Bill 1950 would have allowed. Citing section 1203.2(a) and *Leiva*, the People argue that even after enactment of Assembly Bill 1950 the trial court retains jurisdiction to adjudicate probation violations occurring during the original grant of probation. But Kuhnel challenges the efficacy of a summary revocation order made thirteen months into her probationary period, once Assembly Bill 1950 shortened the maximum term for her probation to one year.

While not directly on point, *Leiva* is helpful for its analysis of the Legislative intent behind section 1203.2(a). The question in *Leiva* was whether, years after probation had been summarily revoked, the tolling

9

provision of former section 1203.2(a) authorized a court to find a violation of probation based only on different conduct that occurred after the court-imposed probationary period had elapsed. (*Leiva, supra*, 56 Cal.4th at p. 502.) Following an extensive review of the legislative history, our high court concluded that the tolling provision was intended to preserve a court's jurisdiction to act on a violation after summarily revoking probation, even if the probationer did not appear for a formal hearing until after the expiration of the term; however, the provision was not intended to extend the terms and conditions of probation indefinitely so as to authorize a finding that probation was violated by acts committed after the original probationary term. (*Id.* at pp. 514–515.)

*Leiva* explains that the Legislature intended the tolling provision to promote two objectives. (*Leiva, supra*, 56 Cal.4th at p. 515.) First, the provision "would ensure that, once probation was summarily revoked, the prosecution would have a fair opportunity to prove that a defendant violated probation during the probationary period even when a formal probation violation hearing could not be held before probation expired," and, second, it "would ensure a defendant's due process right to a formal hearing in which to litigate the validity of an allegation that he violated the conditions of probation during the probationary period whenever such a formal hearing could be held." (*Ibid.*) The high court thus concluded that "summary revocation of probation preserves the trial court's authority to adjudicate a claim that the defendant violated a condition of probation during the probationary period." (*Ibid.*) At the hearing on the violation, the court may decide whether there was a violation during the probationary period and whether to reinstate or terminate probation. (*Id.* at pp. 515–516, citing

10

*People v. Tapia* (2001) 91 Cal.App.4th 738, 741–742, disapproved on another point in *People v. Wagner* (2009) 45 Cal.4th 1039, 1061, fn. 10.)

We agree with the People that *Leiva* points us in the right direction. Both Kuhnel's alleged violation and the summary revocation of probation occurred during the original probationary period. And her first probationary year had not yet expired when Kuhnel allegedly violated probation in 2017.[4] All of these events occurred well before the effective date of Assembly Bill 1950—indeed, before the law was even introduced in the Legislature—so no one had any reason to expedite summary revocation of probation to ensure the court's continued jurisdiction. (Compare *Journey, supra,* 58 Cal.App.3d at pp. 26–28 [ex parte summary revocation on last possible day preserved jurisdiction]; Legis. Counsel's Dig., Assem. Bill 1950, Stats. 2020, ch. 328, approved by Governor Sept. 30, 2020.)

These facts lead us to conclude that giving full effect to the trial court's summary revocation of Kuhnel's probation conflicts with neither the letter nor the spirit of *Estrada.* "Generally, statutes are presumed to apply only

[4] This case does not raise the question of whether the court may adjudicate a violation that took place after the probationary period now permissible under Assembly Bill 1950 (i.e., after the first year for most misdemeanors), but while a person was validly on probation under the law then in effect. Another case we decide today, *People v. Faial* (Feb. 28, 2022, A159026) __ Cal.App.5th __, involves such violations in the felony probation context and holds that Assembly Bill 1950 does not invalidate a trial court's revocation and termination of a defendant's probation "where, as here, such actions were properly taken before Assembly Bill 1950's effective date." (*Id.* at p. 6.) The analysis in *Faial* reinforces the consistent conclusion we reach on the facts of this case. We acknowledge that another appellate court recently reached a different result in *People v. Butler* (Feb. 15, 2022, B313121) __ Cal.App.5th __, but without addressing section 1203.2(a) or *Leiva, supra,* 56 Cal.4th at p. 512, and we respectfully disagree with its conclusion.

prospectively." (*People v. Frahs* (2020) 9 Cal.5th 618, 627; *Estrada*, *supra*, 63 Cal.2d at p. 746.) *Estrada* establishes a contrary presumption for a statute ameliorating a criminal penalty only because it understands such a provision to " 'represent[] a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.' " (*Estrada*, at p. 745.) The cases applying Assembly Bill 1950 retroactively have emphasized the legislative goal of limiting the length of probationary periods to that which promotes rehabilitation, thus leading to a decrease in unnecessary supervision and reincarceration for technical violations. (See, e.g., *Sims*, *supra*, 59 Cal.App.5th at pp. 961–962; *Quinn*, *supra*, 59 Cal.App.5th at pp. 880–881.) This goal would not be served by a retroactive interpretation that gives a misdemeanor probationer a free pass for a violation that already prompted summary revocation while she was properly on probation under then-prevailing law—especially where, as here, the alleged violation occurred during the first year of probation, which the Legislature continues to believe is a period when probation serves a legitimate rehabilitative purpose.

Because Kuhnel was validly on probation when her probation was summarily revoked, section 1203.2(a) by its terms tolls the running of the probationary period until a formal probation hearing occurs. We see nothing in the rationale of *Estrada* that suggests we are to apply Assembly Bill 1950 retroactively to divest courts of the jurisdiction section 1203.2(a) confers—nothing that would absolve Kuhnel of responsibility for a probation violation she committed during her first year, based on the fortuity that the court revoked probation only after the one-year mark. At the time these events transpired, the passing of the first probationary year had no legal significance. *Estrada* teaches that we should avoid imposing punishment the

Legislature has determined to be excessive (*Estrada*, *supra*, 63 Cal.2d at p. 745), but it does not require us to play "gotcha" with the prosecution, imposing an after-the-fact, artificial deadline for summary revocation. The rationale of *Estrada* provides no basis for departing from the general rule of prospective application when analyzing the date by which a court must have summarily revoked probation in order to preserve its authority to adjudicate a violation committed during a probationer's first year.

We know that in 1977 the Legislature was intent "on *preserving the jurisdiction* of the trial court to hold formal probation violation hearings." (*Leiva*, *supra*, 56 Cal.4th at p. 512.) We see nothing in the language or legislative history of Assembly Bill 1950 to suggest a legislative change of course on this issue. Our task in construing a statute is to ascertain the intent of the Legislature (*id*. at p. 506), and we see no indication the Legislature intended Assembly Bill 1950 to deprive courts of the authority it had given them in enacting the tolling provision of section 1203.2(a). We accordingly conclude that the trial court's summary revocation of Kuhnel's probation preserved its authority to adjudicate the alleged violation, and the court did not err in denying her motion to terminate probation.

## DISPOSITION

Kuhnel's petition for a writ of mandate is denied.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

13

Trial Court:        Contra Costa County Superior Court

Trial Judge:        Hon. Brian F. Haynes

Counsel:        Robin Lipetzky and Ellen Mcdonnell, Public Defenders,
            Lyla Bugara, Deputy Public Defender for Petitioner

            Diana Becton, District Attorney, Ryan Wagner, Deputy
            District Attorney, Daniel Becker, Certified Law Clerk
            for Real Party in Interest

*Kuhnel v. Superior Court* (A163307)